UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

   -v-                                         CASE NO. 3:22-cr-0082 (DNH)
                                                 **DEFENSE SENTENCING MEMORANDUM**

EJEMBI ONAH,

                Defendant.

---

## I. PRELIMINARY STATEMENT

On October 10, 2023, after a bench trial, Ejembi Onah ("Dr. Onah") was found guilty of two counts of wire fraud (18 U.S.C. § 1343) and three counts of money laundering (18 U.S.C. § 1957). (Dkt. No. 96.) Sentencing is scheduled for September 12, 2024. The United States Probation Department prepared a Presentence Investigation Report (*hereinafter* "PSR") on May 8, 2024, in anticipation of sentencing. (Dkt. No. 103.) The PSR sets forth a total offense level of 20, a Criminal History Category of I, and a Guideline sentencing range of 33-41 months. *Id*. ¶¶ 64, 69, 102. The defense respectfully submits this memorandum in support of a sentence of time served to be followed by a period of supervised release during which Dr. Onah would be required to pay restitution.

## II. FACTUAL AND PROCEDURAL HISTORY

Dr. Onah was born in Nigeria in 1963. (Dkt. No. 103 ¶ 75.) His mother and his sister still live in Nigeria. *Id*. His father, who was a farmer, died in a car accident in 1981. *Id*.  During Dr. Onah's childhood and teen years, he worked on his parents' farm after school and on Saturdays. *Id*. ¶ 76. He graduated from high school in 1980. *Id*. ¶ 87. He went to college in Nigeria and earned a bachelor's degree in chemistry in 1985 and a master's degree in organic chemistry in

1

1988. *Id*. After college, he served in the army for a year, which is common for college graduates in Nigeria. *Id*. ¶ 90. Dr. Onah's army service consisted of teaching English classes. *Id*.

In 1993, Dr. Onah married Joy O. Onah. (Dkt. No. 103 ¶ 79.) They are still married. *Id*. They have four children, ranging in age from 19 to 27. *Id*. All four children live in the Ithaca area. *Id*.

Dr. Onah left Nigeria in 1996 to earn his Ph.D. in Germany. (Dkt. No. 103 ¶ 77.) In 2001, he moved to the United States. *Id*. He worked as a scholar at Virginia Tech for year. *Id*. ¶ 96. He then moved to New York State and has lived in Tompkins County since 2007. *Id*. ¶ 77. He worked at Cornell University from 2001 to 2004. *Id*. ¶ 96. He became a naturalized United States citizen on August 23, 2012. *Id*.

After leaving Cornell, Dr. Onah began operating several corporations and non-profit agencies. (Dkt. No. 103 ¶¶ 92-95.) In addition, he pursued his lifelong interest in religion. In 2021, Dr. Onah received a Ph.D. in biblical studies. *Id*. ¶ 87. He published a book in January 2024 titled *God's Grace by Faith in Jesus Christ. Id*. at 21 n.3.

As the Court is aware from the bench trial, the charges in this case stem from events in 2020 and 2021. (Dkt. No. 103 ¶¶16-49.) The government contended, and the Court found, that Dr. Onah misrepresented information on multiple applications for Paycheck Protection Program ("PPP") loans during the COVID-19 pandemic. *Id*. Dr. Onah has always contended that he was the victim of computer hackers. *Id*. ¶ 17.

Dr. Onah was charged by complaint on April 2, 2021. (Dkt. No. 1.) He made his initial appearance by video on April 8, 2021. (Minute Entry Apr. 8, 2021.) He was released on conditions pending trial. (Dkt. No. 11.) He has been compliant with the conditions of his release during the three years that his case has been pending. (Dkt. No. 103 ¶ 7.)

Dr. Onah had a stroke in February 2022. (Dkt. No. 103 ¶ 82.) He was hospitalized in Syracuse for several days, during which time physicians removed a blockage from his brain and implanted a heart monitor. *Id*. Upon his release from the hospital, he was placed in rehabilitation at Cayuga Medical Center for approximately two weeks. *Id*. He continued to receive weekly occupational and physical therapy for a few months after his release from the rehabilitation hospital. *Id*. He continues to experience some memory issues as a result of the stroke. *Id*. He is currently being treated for hypertension, hyperlipidemia, thalassemia (an inherited blood disorder that affects the structure of the red blood cells), a left anterior fascicular block of the left heart ventricle, and damage to the left hemisphere of his brain from the stroke. *Id*. ¶ 83.

Dr. Onah was indicted on March 18, 2022. (Dkt. No. 35.) The case proceeded to trial. The Court conducted the bench trial on October 10, 2023. (Minute Entry Oct. 10, 2023.) Dr. Onah testified on his own behalf. (Dkt. No. 108 at 81-121.) The Court found Dr. Onah guilty. (Dkt. No. 96.) Sentencing is scheduled for September 12, 2024. (Dkt. No. 107.)

### III.   THE FACTORS LISTED IN 18 U.S.C. § 3553(a) WEIGH IN FAVOR OF A GUIDELINE SENTENCE OF 120 MONTHS.

In determining a sentence, a court must consider the statutory concerns listed in 18 U.S.C. § 3553(a). Those factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; and (2) the need for the sentence imposed to (A) reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense; (B) afford adequate deterrence to criminal conduct; and (C) protect the public from further crimes of the defendant. 18 U.S.C. §3553(a). Here, these factors weigh in favor of imposing a sentence of time served to be followed by a period of supervised release.

### A. Dr. Onah's History and Characteristics Weigh in Favor of a Below-Guideline Sentence of Time Served.

Dr. Onah's history and characteristics weigh in favor of a below-Guideline sentence for three reasons. First, Dr. Onah has no criminal history other than the current offense. (Dkt. No. 103 ¶ 69.) It is "general[ly] appropriate[] [to] impos[e] a sentence other than imprisonment in cases in which the defendant is a first offender." 28 U.S.C. § 994(j). Courts often impose below-Guideline offenses for first-time non-violent offenders, particularly where the defendant commits the offense relatively late in life. *See, e.g.*, *United States v. Paul*, 561 F.3d 970 (9th Cir. 2009)(holding within-Guideline sentence of fifteen months unreasonably high in part because defendant was first-time offender with no criminal record whatsoever); *United States v. Tomko*, 562 F.3d 558 (3d Cir. 2009) (en banc) (below-Guideline sentence of probation reasonable where defendant convicted of tax evasion of $225,000, had "minimal criminal record"). The PSR notes that Dr. Onah's lack of criminal history could warrant a below-Guideline sentence. (Dkt. No. 103 ¶ 123.)

Second, Dr. Onah has been steadily employed throughout his life. (Dkt. No. 103 ¶¶ 92-96.) Courts may appropriately consider a defendant's employment history as a reason for a below-Guideline sentence. *See United States v. Munoz-Nava*, 524 F.3d 1137 (10th Cir. 2008) (affirming sentence of one year and a day for defendant convicted of possession with intent to distribute 100 grams of heroin with Guideline range of forty-six to fifty-seven months, citing in part defendant's "long and consistent work history.") The PSR notes that Dr. Onah's history of gainful employment over many years could warrant a below-Guideline sentence. (Dkt. No. 103 ¶ 123.)

Third, Dr. Onah is in poor physical health. He suffered a stroke while this case was pending. He suffers from hypertension, hyperlipidemia, thalassemia (an inherited blood disorder that affects the structure of the red blood cells), a left anterior fascicular block of the left heart

ventricle, and damage to the left hemisphere of his brain from the stroke. (Dkt. No. 103 ¶ 83.) A defendant's poor medical condition is an appropriate factor for the Court to rely upon when imposing a below-Guideline sentence. *See United States v. Alemenas*, 553 F.3d 27 (1st Cir. 2009) (downward variance based on defendant's chronic neck pain and mental health); *United States v. McFarlin* (8th Cir. 2008) (downward departure based on defendant's mental health and heart disease); *United States v. Weintraub*, 371 F. Supp. 2d 164, 167 (D. Conn. 2005) (sentencing court granted substantial downward departure based on defendant's poor health); *United States v. Jimenez*, 212 F. Supp. 2d 214 (S.D.N.Y. 2002) (downward departure where defendant suffered brain aneurism); *United States v. Kloda*, 133 F. Supp. 2d 345 (S.D.N.Y. 2001) (downward departure where defendant had health problems); *United States v. Hammond*, 37 F. Supp. 2d 204 (E.D.N.Y. 1999) (downward departure where defendant suffered from HIV); *United States v. Blarek*, 7 F. Supp. 2d 192 (E.D.N.Y. 1998) (downward departure based on defendant's health) *United States v. Gigante*, 989 F. Supp. 436 (E.D.N.Y. 1998) (downward departure where defendant suffered from heart condition). The PSR notes that Dr. Onah's physical health could warrant a below-Guideline sentence. (Dkt. No. 103 ¶ 123.) Therefore, this factor weighs in favor of the Court imposing a below-Guideline sentence of time served on Dr. Onah.

    **B. A Sentence of Time Served Would Reflect the Seriousness of the Offense, Promote Respect for the Law, Provide Just Punishment for the Offense, and Afford Adequate Deterrence to Criminal Conduct.**

A sentence of time served to be followed by a period of supervised release, during which Dr. Onah would be required to pay restitution, would reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense. As the PSR notes, the victims in this case were financial institutions and the loss they suffered was financial. (Dkt. No. 103 ¶¶ 50-51.) If imprisoned, Dr. Onah would have no capacity to pay restitution. Conversely, if

he is not imprisoned, he would be able to begin paying his debt. This punishment would also afford adequate deterrence to criminal conduct. Studies of the deterrent effect of prison sentences have found that it is the prosecution of crime, rather than the sentence imposed, that has the strongest deterrent effect. In one of the best studies of specific deterrence, which involved federal white-collar offenders in the pre-guideline era, no difference in deterrence was found between probation and imprisonment. Another study by the Institute of Criminology at Cambridge University examined the effects of changes to both the *certainty* and the *severity* of punishment. While significant correlations were found between the certainty of punishment and crime rates, the "correlations between sentence severity and crime rates . . . were not sufficient to achieve statistical significance." See David Weisburd et. al., *Specific Deterrence in a Sample of Offenders Convicted of White-Collar Crimes*, 33 Criminology 587 (1995). Therefore, this factor weighs in favor of the Court imposing a below-Guideline sentence of time served on Dr. Onah.

### C. A Sentence of Time Served Would Protect the Public from Further Crimes of the Defendant.

A sentence of time served would protect the public from further crimes by the defendant. As noted above, Dr. Onah is sixty-one years old and has no criminal history other than this case. He has demonstrated his ability to obey court orders by remaining compliant with the conditions of his release during the three years that his case has been pending. (Dkt. No. 103 ¶ 7.) This compliance shows that incarceration is not necessary to protect the public because Dr. Onah will follow the Court's conditions of supervised release. Courts have considered a defendant's good behavior while under pretrial supervision in determining the appropriate sentence. See *United States v. Munoz-Nava*, 524 F3d 1137 (10th Cir. 2008)(in heroin distribution case where guidelines were 47-56 months, district court's sentence of one year and one day in prison to be followed by one year home detention was reasonable in part because of defendant's behavior while on pretrial release for 1.5 years); *United States v. Baker*, 502 F3d 465 (6th Cir

6

2007)(below guideline sentence of probation with one year house arrest was proper in part because defendant behaved "exceedingly well" while under supervision). Therefore, this factor weighs in favor of the Court imposing a below-Guideline sentence of time served on Dr. Onah.

### IV.   THE GOVERNMENT HAS NOT MET ITS BURDEN OF PROVING THAT THE TWO-LEVEL ENHANCEMENT FOR OBSTRUCTION OF JUSTICE APPLIES.

The PSR adds two points to Dr. Onah's total offense level pursuant to Guideline § 3C1.1 for obstruction of justice. (Dkt. No. 103 ¶ 60.) The PSR states that the enhancement is applicable because Dr. Onah testified that "unknown third parties were responsible for submitting the fraudulent PPP loan applications." *Id*. ¶¶ 52, 60. The defense objects to the imposition of this enhancement.

An enhancement for obstruction of justice is not appropriately applied simply because a defendant testifies on his own behalf and denies his guilt. The enhancement is appropriately applied only if the "sentencing court ... find[s] that the defendant 1) willfully 2) and materially 3) committed perjury, which is (a) the intentional (b) giving of false testimony (c) as to a material matter." *United States v. Zagari*, 111 F.3d 307, 329 (2d Cir. 1997). The sentencing court must "identify the statements on which the perjury finding was grounded," find that they are material, and "make explicit findings that defendant's testimony was intentionally false." *United States v. Rosario*, 988 F.3d 630, 634 (2d Cir. 2021) (per curiam) (internal quotation and alteration marks omitted). The government bears the burden of proving that the testimony was perjurious*,* "a burden that includes a showing of specific intent." *United States v. Weissman*, 22 F. Supp. 2d 187, 190 (S.D.N.Y. 1998), *aff'd,* 195 F.3d 96 (2d Cir. 1999). Here, the government has not made any argument regarding specific intent. (Dkt. No. 106.) Therefore, the government has not met its burden of showing that the enhancement applies. As matters stand, imposing the obstruction

enhancement would serve solely to punish Dr. Onah for exercising his right to testify on his own behalf. Accordingly, the defense requests that the Court decline to impose the enhancement.

## V. THE COURT SHOULD IMPOSE A BELOW-GUIDELINE SENTENCE TO EXPRESS DISAGREEMENT WITH THE FRAUD GUIDELINE, WHICH IS NOT BASED ON EMPIRICAL DATA.

The Court should impose a below-Guideline sentence of time served to express disagreement with the fraud Guideline, which is not based on empirical data. Under normal circumstances, the Sentencing Commission bases its Guidelines on empirical data. *Kimbrough v. United States*, 552 U.S. 85, 109 (2007); *see also Gall v. United States*, 552 U.S. 38, 46 (2007) (noting that even though the Guidelines are advisory rather than mandatory, they are [mostly] … the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions.") But when a particular Guideline is not based on an empirical approach, a court is not presented with the ordinary case in which the Commission's recommendation of a sentencing range will reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives. *See e.g.*, *Kimbrough*, 552 U.S. at 109; *see also Gall*, 552 U.S. at 46 n.2 (noting that not all Guidelines are tied to empirical evidence). In these cases, it is not an abuse of discretion for a district court to conclude when sentencing a particular defendant that application of the guideline yields a sentence greater than necessary to achieve § 3553(a)'s purposes even in a mine-run case. *Kimbrough*, 552 U.S. at 109.

Many courts have rejected the fraud Guideline on policy grounds because "the amount of loss … [has] become the principal determinant of the adjusted offense level and hence the corresponding sentencing range." *United States v. Algahaim*, 842 F.3d 796, 800 (2d Cir. 2016). "This approach, unknown to other sentencing systems, was one the Commission was entitled to take, but its unusualness is a circumstance that a sentencing court is entitled to consider." *Id*.

8

*See also  United States v. Adelson*, 441 F. Supp. 2d 506, 509 (S.D.N.Y. 2006); *United States v. Emmenegger*, 329 F. Supp. 2d 416, 427 (S.D.N.Y. 2004). The Guidelines do not "explain[] why it is appropriate to accord such huge weight" to loss amount. *Adelson*, 441 F. Supp. 2d at 509. Rather, "the numbers assigned by the Sentencing Commission to various sentencing factors appear to be more the product of speculation, whim, or abstract number-crunching than of any rigorous methodology—thus maximizing the risk of injustice." *United States v. Gupta*, 904 F. Supp. 2d 349, 351 (S.D.N.Y. 2012). One judge has observed that the lack of empirical data underlying the Guideline has led to "[t]he widespread perception that the loss guideline is broken." *United States v. Corsey*, 723 F.3d 366, 378 (2d Cir. 2013) (Underhill, J., concurring).

In this case, the loss amount adds twelve levels to Dr. Onah's offense level. (Dkt. No. 103 ¶ 56.) It increases his base offense level from seven to nineteen. *Id*. If that twelve-level increase did not apply, Dr. Onah's sentencing Guideline range would be 0-6 months rather than 33-41 months. That dramatic increase is not based on any empirical data. Therefore, the defense requests that the Court impose a below-Guideline sentence of time served to express disagreement with the fraud Guideline.

## VI.    REQUEST FOR SELF-SURRENDER

As discussed above, the defense contends that a time-served sentence is appropriate in this case. However, if the Court imposes further incarceration, the defense respectfully requests that Dr. Onah be allowed to self-surrender.

## VII. CONCLUSION

For the reasons discussed above, the defense respectfully requests that the Court impose a sentence of time served to be followed by a period of supervised release during which Dr. Onah would be required to pay restitution.

DATED: August 23, 2024

By:

LISA A. PEEBLES
FEDERAL PUBLIC DEFENDER
*/s/ Courtenay K. McKeon, Esq.*
Assistant Federal Public Defender
Bar Roll No. 515841
Clinton Exchange, 3rd Floor
4 Clinton Street
Syracuse, New York   13202
(315) 701-0080

To:  Michael D. Gadarian, AUSA (by ECF)
Karlie Hall, SUSPO (by email)
Ejembi Onah (by email)