IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | Criminal No.    3:22-CR-082 (DNH) |
| | ) | |
| **v.** | ) | **SECOND GOVERNMENT** |
| | ) | **SENTENCING MEMORANDUM** |
| **EJEMBI ONAH,** | ) | |
| | ) | |
| | ) | |
| **Defendant.** | ) | |

## I. Introduction

The defendant is scheduled for sentencing on September 12, 2024, following his conviction after a bench trial to two counts of wire fraud, in violation of 18 U.S.C. § 1343, and three counts of making transactions in criminally derived property, in violation of 18 U.S.C. § 1957. The government respectfully submits this supplemental sentencing memorandum to address two issues raised by Onah in his sentencing memorandum filed on August 23, 2024. *See* Dkt. 109.[1]

## II. The PSR Properly Applied the Obstruction of Justice Enhancement

Contrary to the defendant's suggestions, Def. Sent. Mem. (dkt. 109) at ECF 7-8, the PSR correctly scores the two-level obstruction of justice adjustment under U.S.S.G. § 3C1.1. "[T]o apply § 3C1.1, the district court [is] required to make a finding that the defendant had the specific intent to obstruct justice, i.e., that he knowingly lied with the purpose of obstructing the pre-sentence investigation." *United States v. Chibuko*, 744 F.3d 259, 267 (2d Cir. 2014). For a defendant's conduct to qualify as obstruction of justice, it must have the "potential to impede" the investigation, prosecution, or sentencing of the defendant. *United States v. McKay*, 183 F.3d 89, 95 (2d Cir. 1999). The enhancement for obstruction of justice may be based on a defendant

---

[1] The government filed its first sentencing memorandum on May 24, 2024. *See* Dkt. 106. The defense memorandum was timely based on adjournments granted by this Court.

committing perjury. *See* U.S.S.G. § 3C1.1, cmt. n. 4(b). "'A witness testifying under oath or affirmation violates' 18 U.S.C. § 1621, the federal perjury statute, 'if she gives false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory.'" *United States v. Norman*, 776 F.3d 67, 84 (2d Cir. 2015) (quoting *United States v. Dunnigan*, 507 U.S. 87, 94, 113 (1993)). "[A]n enhancement for obstruction of justice based on perjured testimony may be imposed only where the sentencing court finds 'that the defendant 1) willfully 2) and materially 3) committed perjury, which is (a) the intentional (b) giving of false testimony (c) as to a material matter'" *United States v. Ben-Shimon*, 249 F.3d 98, 102 (2d Cir. 2001) (quoting *United States v. Zagari*, 111 F.3d 307, 329 (2d Cir. 1997)).

The record amply supports U.S.S.G. § 3C1.1's application here. *See, e.g.*, PSR ¶ 17. The Court should easily conclude that the defendant's false testimony was not the result of confusion, a mistake, or faulty memory. Instead, the defendant made repeated material misrepresentations about purported hackers obtaining loans on his behalf in a calculated effort to defeat the charges at trial. The defendant stuck to those lies even though he could not explain why the supposed hackers would have had the fraudulent loans' proceeds deposited into the defendant's bank account and why he then elected to spend those proceeds on himself. This is not a simple case of confusion or a defendant denying the allegations; rather, the defendant here brazenly lied to the Court in a misguided attempt to evade justice. Accordingly, the Court should score an upward adjustment under U.S.S.G. § 3C1.1. *See Norman*, 776 F.3d at 84-85 (affirming application of U.S.S.G. § 3C1.1 where district court found defendant's testimony was intentionally false on material matters and contradicted by other evidence).

### III. This Court Should Not Vary Downward Because the Fraud Guideline is Structured to Increase with Loss Amount

Onah asks this Court for a time-served sentence to reflect the Court's "disagreement with the fraud Guideline, which is not based on empirical data." Def. Sent. Mem. (dkt. 109) at ECF 8-9. Onah's argument is misplaced because critiques about the fraud guideline being based on loss amount redound to the *favor* of fraud offenders, like himself, who cause comparatively less loss than other fraudsters.

As courts have recognized and as the guidelines themselves make plain, the base offense in U.S.S.G. 2B1.1 is low because the guideline is structured to reflect increases for loss as a proxy for the seriousness of an offense. For example, the Background Commentary for U.S.S.G. § 2B1.1 explains:

> The Commission has determined that, ordinarily, the sentences of defendants convicted of federal offenses should reflect the nature and magnitude of the loss caused or intended by their crimes. Accordingly, along with other relevant factors under the guidelines, *loss serves as a measure of the seriousness of the offense and the defendant's relative culpability and is a principal factor in determining the offense level under this guideline.*

(Emphasis added); *see United States v. Algahaim*, 842 F.3d 796 (2d Cir. 2016) (recognizing "low base offense level" and enhancements for loss might create artificially high guidelines relative to culpability in certain cases with high loss amounts). Likewise, as the Second Circuit explained in *Algahaim*:

> The Commission could have approached monetary offenses quite differently. For example, it could have started the Guidelines calculation for fraud offenses by selecting a base level that realistically reflected the seriousness of a typical fraud offense and then permitted adjustments up or down to reflect especially large or small amounts of loss. . . . Where the Commission has assigned a rather low base offense level to a crime and then increased it significantly by a loss enhancement, that combination of

> circumstances entitles a sentencing judge to consider a non-Guidelines sentence.

*Id.* at 800.

Onah received a 12-level enhancement because he caused a loss of more than $250,000 but less than $550,000. *See* PSR (dkt. 103) ¶ 56 (citing U.S.S.G. § 2B1.1(b)(1)(G)). But for the sliding scale of enhancements based on loss, there is no reason to assume that the base offense level for fraud would be 7 rather than, for example, 30 (the top of the loss table) with a corresponding *reduction* if a fraud happened to involve minimal loss. *See generally Algahaim*, 842 F.3d at 800. Onah's argument thus relies on the structure of the guideline where it helps him (artificially low base offense level) but eschews the same guideline when it results in enhancements. Fundamentally, Onah's guideline recommended sentence of 33-41 months is a fair reflection of the seriousness of his fraud, as proved to this Court during the bench trial and as described in detail in the PSR. *Algahaim* reflects only that this Court should assess whether the guideline reflects a fair sentence, which is the case here. *See United States v. Moose*, 893 F.3d 951, 959 (7th Cir. 2018) (fraud guideline produced reasonable recommended sentence for sole perpetrator of fraud who "put in his pocket $480,000 that he obtained under false pretenses").

Additionally, in fraud cases, it is critical that the sentence imposed send a strong message not only to this defendant but also to all would-be fraudsters that this type of misconduct—stealing crucial benefits meant for those who truly needed it in a desperate time—will be met with serious consequences. As numerous U.S. Courts of Appeals have recognized, "[b]ecause economic and fraud-based crimes"—like those committed by the defendant here—"'are more rational, cool, and calculated than sudden crimes of passion or opportunity,' these crimes are 'prime candidate[s] for general deterrence.'" *United States v. Martin*, 455 F.3d 1227, 1240 (11th Cir. 2006) (quoting Stephanos Bibas, *White-Collar Plea Bargaining and Sentencing After Booker*, 47 Wm. & Mary L.

Rev. 721, 724 (2005)); *see also, e.g.*, *United States v. Mueffelman*, 470 F.3d 33, 40 (1st Cir. 2006) (noting that the "deterrence of white-collar crime" is "of central concern to Congress"); *United States v. Sample*, 901 F.3d 1196, 1200 (10th Cir. 2018) ("Congress has recognized that general deterrence is particularly important in the context of white collar crime"). The defendant, and others like him, should be deterred from thinking that they can defraud lenders with impunity. And the public should have faith that such significant misconduct during a crisis will be met with serious consequences.  This is yet another reason why a guidelines sentence should be imposed.

CARLA B. FREEDMAN
United States Attorney

By: */s/ Michael D. Gadarian*

Michael D. Gadarian (Bar Roll No. 517198)
Joshua R. Rosenthal (Bar Roll No. 700730)
Assistant United States Attorneys